

## IN THE CIRCUIT COURT OF ELMORE COUNTY, ALABAMA
### NINETEENTH JUDICIAL CIRCUIT

| | |
|---|---|
| **DAVID R. and SHARON K. DEAN,** § | |
| § | |
| **Plaintiffs,** § | |
| § | |
| **v.** § | **CIVIL ACTION NO.** _____ |
| § | |
| **BAC HOME LOANS SERVICING, LP** § | |
| **Fictitious Defendants, A. B, C,... who are** § | |
| **those individuals, partnerships, corporations** § | |
| **limited liability companies, or legal entities** § | **JURY TRIAL DEMANDED** |
| **who are or have been mortgage brokers,** § | |
| **holders, or servicers of the notes and** § | |
| **mortgages executed by the Plaintiffs, or who** § | |
| **have otherwise attempted to collect fees,** § | |
| **charges, and other penalties from the** § | |
| **Plaintiffs; Fictitious Defendants AA, BB,** § | |
| **CC,... who are those individuals,** § | |
| **partnerships, corporations, limited liability** § | |
| **companies, or other legal entities who** § | |
| **conducted property inspections on behalf of** § | |
| **the holders or servicers of the notes and** § | |
| **mortgages executed by the Plaintiffs and who** § | |
| **also performed other mortgage related** § | |
| **servicers on behalf of the holders or** § | |
| **servicers,** § | |
| § | |
| **Defendants.** § | |

## COMPLAINT

1.      Plaintiff Sharon Dean is an individual over the age of nineteen (19) and a resident of Elmore County, Alabama.

2.      Plaintiff David Dean is an individual over the age of nineteen (19) and a resident of Elmore County, Alabama.

3.      Plaintiff David Dean and Plaintiff Sharron Dean will be hereafter collectively be referred to as "Plaintiffs."

4.      Defendant BAC Home Loans Servicing, LP ("BAC") is a foreign corporation doing business in Elmore County, Alabama.

5.      Fictitious Defendants A, B, C, ... are those individuals, partnerships, corporations, limited liability companies, or other legal entities who are have been mortgage brokers, holders, or servicers of the notes and mortgages executed by the Plaintiffs or who have otherwise attempted to collect fees, charges, and other penalties as more fully discussed below.

6.      Fictitious Defendants AA, BB, CC, ... are those individuals, partnerships, corporations, limited liability companies, or other legal entities who conducted property inspections on behalf of the holders or servicers of the notes and mortgages executed by the Plaintiffs and who performed other mortgage related services on behalf of those holders or servicers.

7.      Named and Fictitious Defendants will hereafter collectively be referred to as "Defendants."

8.      Jurisdiction and venue are proper before this Court.

9.      Plaintiffs' claims are brought solely under Alabama law, and Plaintiffs do not bring any claim and/or disclaims any and all claims under any Federal laws, statutes, or regulations.

## FACTS

10.     On or around June 27, 2005, Plaintiffs executed a note and mortgage on their residence located at 21 Mountain Terrace Lane in Wetumpka, Alabama.

11.     The note and mortgage have been serviced and/or held by one or more of the Defendants.

12.     The servicing rights to this loan were transferred to one or more Defendants.

2

13.     The Defendants entered into an agreement with the U.S. Department of Treasury to participate in administering loan modifications through the Home Affordable Modification Program ("HAMP"). Upon information and belief, Defendant BAC entered this agreement on or around April 17, 2009.

14.     This agreement obligated the Defendants to adhere to certain duties and/or responsibilities as outlined in the "Home Affordable Modification Program Guidelines" for the intended benefit of mortgagors like the Plaintiffs, and those duties and/or responsibilities included, but are not limited to:

- Any foreclosure action will temporarily suspended during the trial period, or while borrowers are considered for alternative foreclosure prevention options;

- The servicer must inform borrowers of the availability and advantages of counseling and provide a list of local HUD-approved counselors, and that counseling is a requirement of the modification terms;

- There are no modification fees or charges borne by the borrower;

- Unpaid late fees will be waived for the borrower. These include late fees prior to the start of the trial period and accrued during the period;

- While promoting or describing loan modifications, servicers should provide borrowers with information designed to help them understand the modification terms that are being offered and the modification process. Servicers also must provide borrowers with clear and understandable written information about the material terms, costs, and risks of the modified mortgage loan in a timely manner to enable borrowers to make informed decisions;

3

- Servicers should have procedures and systems in place to be able to respond to inquiries and complaints relating to loan modifications. Servicers should ensure that such inquiries and complaints are provided fair consideration, and timely appropriate responses and resolution.

15.     In consideration for providing HAMP Loan Modifications, Defendants received financial payment from the United States Government in an effort to help struggling homeowners like the Plaintiffs.

16.     On or around June 18, 2009, Plaintiffs contacted the Defendants and informed the Defendants they were having difficulty making their mortgage payments. The Defendants represented to the Plaintiffs that they qualified for a HAMP loan modification and that the paperwork would be sent to the Plaintiffs for them to complete and return.

17.     The Plaintiffs relied on that representation to their detriment and agreed to participate in a HAMP loan modification with the Defendants.

18.     On or around July 1, 2009, Plaintiffs contacted the Defendants and spoke with a representative named "Jennifer" who represented to the Plaintiffs that their loan account reflected a "current" status in regards to their monthly payments – due to the fact that they were eligible for a loan modification – even though their payment history continued to reflect a late payment. Also during that conversation, the Plaintiffs insisted on making a loan payment, so then Jennifer informed the Plaintiffs that $1,737.68 was the current amount due. Thus, the Plaintiffs made a payment in the amount of $1,737.68, and that payment cleared and was posted on or around July 13, 2009.

19.     On or around July 13, 2009, Plaintiffs contacted the Defendants and spoke with a representative named "Thomas" who informed them that the July 1, 2009 payment of $1,737.68

4

had been received, and Thomas further instructed the Plaintiffs not to make their regularly scheduled monthly payments, because if the Plaintiffs did make their regularly scheduled monthly payment, then they would be disqualified for a HAMP loan modification. Instead, Thomas told the Plaintiffs to make a payment in the amount of $915.13, which they did.

20.     On or around August 1, 2009, the Plaintiffs contacted the Defendants and asked a representative named "Annette" why they had not received any information and/or paperwork regarding their HAMP loan modification. Annette then represented to the Plaintiffs that they had in fact been approved for a HAMP loan modification, and to again make the reduced payment of $915.13. Annette further instructed the Plaintiffs not to make a full regular payment or become current as they would be disqualified for a HAMP loan modification. Plaintiffs again made the $915.13 payment as instructed.

21.     On or around August 15, 2009, the Plaintiffs received the information regarding their HAMP loan modification. The Plaintiffs then completed and returned the loan modification application with all of the required additional documentation on around August 20, 2009. Also on or around August 20, 2009, the Plaintiffs contacted the Defendants who confirmed they had received the application and supporting documentation from the Plaintiffs.

22.     Plaintiffs timely performed all their obligations under the HAMP loan modification.

23.     On or around December 5, 2009, Plaintiffs received another set of loan modification documents, which included another application. The Defendants represented to the Plaintiffs that those documents must be completed and returned before December 14, 2009 along with a payment of $1,441.00. As was required but without any understanding, the Plaintiffs: completed the paperwork, had the paperwork notarized, attached the additional requested

5

information, and returned the paperwork and the payment of $1,441.00 to the Defendants all within the required time frame.

24.     Plaintiffs continued to timely and fully perform their obligations in accordance with what the Defendants had represented were the duties of the Plaintiffs pursuant to the HAMP loan modification.

25.     Even though the Plaintiffs allegedly received the HAMP loan modification, the Defendants have continually and repeatedly threatened to accelerate the payments and to foreclose since that time.  Conversely and around the same time as Defendants' threats, the Defendants would assure the Plaintiffs that everything was in place and that Plaintiffs' loan was not delinquent.  Each time the Plaintiffs inquired about their loan, the Defendants would give them a different answer.

26.     The Defendants repeatedly and continually blamed the threats of acceleration and foreclosure on clerical errors and computer malfunctions, and represented they were not actually maintaining or considering acceleration and foreclosure proceedings against the Plaintiffs.

27.     The Defendants have charged and assessed improper and unearned fees related to foreclosure proceedings that Defendants had no right to initiate against the Plaintiffs.

28.     The improper and unearned excessive fees were also not in accordance with the Defendants' obligations as a provider of HAMP loan modifications.

29.     Additionally, the Defendants' charging of the improper and unearned excessive fees was not in accordance with Defendants' representation that the Plaintiffs were provided with a HAMP loan modification, because if they had been, the Plaintiffs would have received the protections and rights pursuant to HAMP loan modifications in regards to those fees.

6

30.     The Defendants misrepresented to the Plaintiffs that their HAMP loan modification would receive the protections, procedures, and rights of the HAMP program.

31.     The Defendants also suppressed from the Plaintiffs that their HAMP loan modification would not receive the protections, procedures, and rights of the HAMP program.

32.     The Defendants did not perform the duties intended for Plaintiffs' protection as outlined in the "Home Affordable Modification Program Guidelines."

33.     Instead and most notably, the Defendants initiated foreclosure proceedings against the Plaintiffs while maintaining that their HAMP loan modification was pending and/or in effect.

34.     Despite Plaintiffs timely performing all of their obligations and duties under the loan modification, the Defendants sent Plaintiffs notice that their home was scheduled for foreclosure on three separate occasions: December 14, 2010; March 15, 2011; and May 24 2011. The first two foreclosure sale dates have been postponed; however, the May 24 2011 sale date is currently in effect.

35.     The Plaintiffs have been trying in vain for more than a year to obtain a loan modification from the Defendants who have continued to misrepresent and suppress material facts about the status of the Plaintiffs' loan modification.

## COUNT ONE

36.     The allegations of all prior paragraphs are incorporated herein as though set forth again in full.

37.     Defendants misrepresented to the Plaintiffs:

a.      The total amount owed by the Plaintiffs at any given time due to the fact that any improper and fraudulent charges, fees and/or penalties in turn caused the Plaintiffs' loan balance to be inaccurate;

7

b.    The current amount due from the Plaintiffs at any given time due to the fact that any improper and fraudulent charges, fees and/or penalties in turn caused the Plaintiffs' payment amount to be inaccurate;

c.    That they would service the Plaintiffs' note and mortgage in accordance with the terms thereof;

d.    That they had not received proof of insurance on the Plaintiffs' property;

e.    That the Plaintiffs were in default;

f.    That Plaintiffs owed funds which were not actually due;

g.    That Plaintiffs' loan status and history could be "fixed" or "cured" with a repayment plan, forbearance agreement, and/or a loan modification;

h.    That Plaintiffs had incurred fees which had not actually and properly been incurred;

i.    That payments would be applied in a particular manner;

j.    That the property securing the Note and Mortgage was uninsured;

k.    That they had a right to foreclose on the Plaintiffs' property; and

l.    That they had begun foreclosure proceedings on the Plaintiffs' property.

38.    Said representations were made with the intent that Plaintiffs rely upon them.

39.    Plaintiffs' relied on said representations in various ways including, but not limited to:

a.    Sending payments or money to Defendants which was not due;

b.    Delaying or not inquiring into a refinance;

8

        c.      Entering into one or more repayment plans, forbearance agreements, and/or loan modifications.

40.     Defendants benefited from Plaintiffs' reliance.

41.     As a result of said conduct, Plaintiffs were damaged, such damages including mental anguish or emotional distress.

WHEREFORE, Plaintiffs demand judgment against Defendants in an amount exceeding the minimum jurisdictional threshold of this Court, for compensatory (including mental anguish or emotional distress) and punitive damages, court costs, and such other and further relief as a jury may award and this Court may deem just and proper.

**COUNT TWO**

42.     The allegations of all prior paragraphs are incorporated herein as though set forth again in full.

43.     Defendants suppressed from the Plaintiffs:

        a.      The total amount owed by the Plaintiffs at any given time due to the fact that any improper and fraudulent charges, fees and/or penalties in turn caused the Plaintiffs' loan balance to be inaccurate;

        b.      The current amount due from the Plaintiffs at any given time due to the fact that any improper and fraudulent charges, fees and/or penalties in turn caused the Plaintiffs' payment amount to be inaccurate;

        c.      That money paid to the Defendants would be held in "suspense";

        d.      Defendants' true intentions with respect to the foreclosure of the Plaintiffs' home;

        e.      The actual status of Plaintiffs' mortgage loan;

9

      f.      Defendants' true intentions with respect to the handling of the Plaintiffs' loan; and

      g.      The business relationship between Defendants, and between the Defendants and third parties, including but not limited to insurance providers, home inspectors and foreclosure services.

44.      Defendants had a duty to disclose these facts to the Plaintiffs.

45.      As a result of not being made aware of these suppressed material facts, the Plaintiffs:

      a.      Sent payments or money to Defendants that was not due;

      b.      Delayed or failed to inquire into a refinance;

      c.      Entered into one or more repayment plans, forbearance agreements, and/or loan modifications.

46.      As a result of said conduct, Plaintiffs were damaged.

WHEREFORE, Plaintiffs demand judgment against Defendants in an amount exceeding the minimum jurisdictional threshold of this Court, for compensatory (including mental anguish or emotional distress) and punitive damages, court costs, and such other and further relief as a jury may award and this Court may deem just and proper.

## COUNT THREE

47.      The allegations of all prior paragraphs are incorporated herein as though set forth again in full.

48.      One or more contracts existed between Plaintiffs and Defendants.

49.      Defendants breached their agreements with the Plaintiffs.

10

50.    As a result of said breach, Plaintiffs were damaged, such damage including mental anguish or emotional distress.

WHEREFORE, Plaintiffs demand judgment against Defendants in an amount exceeding the minimum jurisdictional threshold of this Court, for compensatory damages, court costs, attorney's fees, and such other and further relief as a jury may award and this Court may deem just and proper.

### COUNT FOUR

51.    The allegations of all prior paragraphs are incorporated herein as though set forth again in full.

52.    Defendants were negligent in the servicing of Plaintiffs' mortgage loan.

53.    As a result of said negligence, Plaintiffs were damaged, such damage including mental anguish or emotional distress.

WHEREFORE, Plaintiffs demand judgment against Defendants in an amount exceeding the minimum jurisdictional threshold of this Court, for compensatory (including mental anguish or emotional distress) and punitive damages, court costs, and such other and further relief as a jury may award and this Court may deem just and proper.

### COUNT FIVE

54.    The allegations of all prior paragraphs are incorporated herein as though set forth again in full.

55.    Defendants were wanton in the servicing of Plaintiffs' mortgage loan.

56.    As a result of said wantonness, Plaintiffs were damaged, such damage including mental anguish or emotional distress.

11

WHEREFORE, Plaintiffs demand judgment against Defendants in an amount exceeding the minimum jurisdictional threshold of this Court, for compensatory (including mental anguish or emotional distress) and punitive damages, court costs, and such other and further relief as a jury may award and this Court may deem just and proper.

## COUNT SIX

57.     The allegations of all prior paragraphs are incorporated herein as though set forth again in full.

58.     Defendants were negligent and wanton in their hiring, training, and supervision of individuals or entities that serviced or conducted inspections of the Plaintiffs' mortgage loan.

59.     As a result of said negligence and wantonness, Plaintiffs' were damaged, such damage including mental anguish or emotional distress.

WHEREFORE, Plaintiffs demand judgment against Defendants in an amount exceeding the minimum jurisdictional threshold of this Court, for compensatory (including mental anguish or emotional distress) and punitive damages, court costs, and such other and further relief as a jury may award and this Court may deem just and proper.

## COUNT SEVEN

60.     The allegations of all prior paragraphs are incorporated herein as though set forth again in full.

61.     Defendants intentionally inflicted emotional distress upon Plaintiffs by threatening and attempting to foreclose on Plaintiffs' home for failure to pay fees and charges which Defendants had no right to collect, and by otherwise making representations that they would and actually begin to foreclosure when they had no right to affect Plaintiffs' ownership in their home.

12

62.     Defendants also intentionally inflicted emotional distress upon Plaintiffs by harassing Plaintiffs by telephone and mail regarding the status of Plaintiffs' mortgage loan and fees and charges which were being applied to Plaintiffs' account improperly.

63.     Such conduct was outrageous and in contravention of good conduct and good faith, and should thus be deemed repugnant by our society.

64.     As a result of said conduct by Defendants, Plaintiffs were damaged and such damages include mental anguish and/or emotional distress.

WHEREFORE, Plaintiffs demand judgment against Defendants in an amount exceeding the minimum jurisdictional threshold of this Court, for compensatory (including mental anguish or emotional distress) and punitive damages, court costs, and such other and further relief as a jury may award and this Court may deem just and proper.

<strong><u>COUNT EIGHT</u></strong>

65.     The allegations of all prior paragraphs are incorporated herein as though set forth again in full.

66.     The Defendants intentionally entered upon the Plaintiffs' property without notice to or permission of the Plaintiffs.

67.     Said entry upon the Plaintiffs' property was committed under circumstances of insult and contumely.

68.     Said entry upon the Plaintiffs' property was accompanied by circumstances of fraud and malice, oppression, aggravation, or gross negligence.

69.     As a result of said trespass, the Plaintiffs' and their property were damaged and such damages include mental anguish and/or emotional distress.

13

WHEREFORE, Plaintiffs demand judgment against Defendant in an amount exceeding the minimum jurisdictional threshold of this Court, for compensatory (including mental anguish or emotional distress) and punitive damages, court costs, and such other and further relief as a jury may award and this Court may deem just and proper.

**COUNT NINE**

70.     The allegations of all prior paragraphs are incorporated herein as though set forth again in full.

71.     Defendants intentionally, recklessly, wantonly, maliciously and/or negligently caused negative and untruthful information regarding Plaintiffs' credit or financial condition to be published to third parties.

72.     This information was false and defamatory.

73.     As a result, Plaintiffs' credit history was damaged and such damages include mental anguish and/or emotional distress

WHEREFORE, Plaintiffs demand judgment against Defendants in an amount exceeding the minimum jurisdictional threshold of this Court, for compensatory (including mental anguish or emotional distress) and punitive damages, court costs, and such other and further relief as a jury may award and this Court may deem just and proper.

**COUNT TEN**

74.     The allegations of all prior paragraphs are incorporated herein as though set forth again in full.

75.     Defendants conspired with each other to commit the wrongs alleged herein.

76.     As a result of said conduct by Defendants, Plaintiffs were damaged and such damages include mental anguish and/or emotional distress.

14

WHEREFORE, Plaintiffs demands judgment against Defendants in an amount exceeding the minimum jurisdictional threshold of this Court, for compensatory (including mental anguish or emotional distress) and punitive damages, court costs, and such other and further relief as a jury may award and this Court may deem just and proper.

**COUNT ELEVEN**

77.     The allegations of all prior paragraphs are incorporated herein as though set forth again in full.

78.     The Defendants entered into contract or contracts amongst themselves for the servicing of the Plaintiffs' loan and the placement of insurance if required by Plaintiffs' note and mortgage.

79.     The Defendants entered into contract or contracts for the transfer of servicing and collection rights to Plaintiffs' loan.

80.     The Defendants breached the contract or contracts.

81.     The contracts were intended to benefit the Plaintiffs.

82.     As a result of said breach, Plaintiffs were damaged and such damages include mental anguish and/or emotional distress.

WHEREFORE, Plaintiffs demand judgment against Defendants in an amount exceeding the minimum jurisdictional threshold of this Court, for compensatory (including mental anguish or emotional distress) and punitive damages, court costs, and such other and further relief as a jury may award and this Court may deem just and proper.

Dated: May 21, 2011

/s/ William H. Robertson, V
William H. Robertson, V (ROB161)
One of the Attorneys for Plaintiff

/s/ C. Lance Gould
C. Lance Gould (GOU007)
One of the Attorneys for Plaintiff

**OF COUNSEL:**

**BEASLEY, ALLEN, CROW,**
**METHVIN, PORTIS & MILES, P.C.**
Post Office Box 4160
Montgomery, Alabama 36103
Telephone: (334) 269-2343
Facsimile: (334) 954-7555
bill.robertson@beasleyallen.com
lance.gould@beasleyallen.com

## JURY DEMAND

**PLAINTIFFS HEREBY DEMAND TRIAL BY JURY STRUCK ON ALL ISSUES OF THIS CAUSE.**

/s/ William H. Robertson, V
OF COUNSEL

**DEFENDANT TO BE SERVED BY CERTIFIED MAIL AS FOLLOWS:**

**BAC Home Loans Servicing, LP**
The Corporation Company
2000 Interstate Park Drive, Suite 204
Montgomery, Alabama 36109

16