IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| DAVID R. DEAN, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:11-cv-785-MEF |
| | ) | [WO – Publish] |
| | ) | |
| BAC HOME LOANS SERVICING, LP | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This cause is before the court on a May 27, 2011 Notice of Removal (Doc. # 1) filed by Defendant BAC Home Loans Servicing, LP ("BAC"), and a Motion to Remand (Doc. # 8) filed by Plaintiffs David R. Dean and Sharon K. Dean ("Plaintiffs" or "the Deans"). The issues having been fully briefed, and after careful consideration of the law and the arguments of counsel, the Court finds that Plaintiffs' motion to remand is due to be **GRANTED**.

## I. BACKGROUND

Plaintiffs executed a note and obtained a mortgage on their Wetumpka, Alabama home on June 27, 2005. (Compl. ¶ 10 (Doc. # 1-1).) Defendant BAC either holds or services (or both) the mortgage. (Compl. ¶ 11, 12.) On June 18, 2009, Plaintiffs contacted and informed BAC that they were experiencing financial hardship and were having difficulties making their mortgage payments. (Compl. ¶ 16.) In response, BAC allegedly informed Plaintiffs that they qualified for a loan modification under the Home Affordable

Modification Program ("HAMP"), which was created under the Emergency Economic Stabilization Act of 2008 ("EESA"), 12 U.S.C. § 5219a(a).

Plaintiffs allege that several BAC representatives "instructed [them] not to make their regularly scheduled monthly payments, because if the Plaintiffs did make their regularly scheduled monthly payment[s], then they would be disqualified for a HAMP loan modification." (Compl. ¶¶ 19, 20.)  Instead, those BAC representatives instructed Plaintiffs to make a substantially lower monthly payment.  (Compl. ¶¶ 19, 20.)  Despite following BAC's instructions, which included making the payments as requested by BAC through its representatives, and submitting all the required modification paperwork in a timely fashion, BAC has allegedly:  "continually and repeatedly threatened to accelerate the payments and to foreclose" on Plaintiffs, (Compl. ¶ 25); charged improper fees associated with the wrongful foreclosure proceedings, as well as fees that are not in accordance with BAC's obligations under HAMP, (Compl. ¶¶ 27, 28); misrepresented to Plaintiffs the protections they were entitled to under the HAMP program, (Compl. ¶ 30); suppressed from Plaintiffs that their HAMP loan modification would not receive the benefits of the HAMP program, (Compl. ¶ 31); failed to perform the duties intended for Plaintiffs' protection as outlined in the HAMP Guidelines, (Compl. ¶ 32); and initiated foreclosure proceedings against Plaintiffs' property while maintaining that their HAMP loan modification was pending and/or in effect, (Compl. ¶ 33).

Plaintiffs' Complaint, which was filed on May 21, 2011, brings a number of state-law claims for these alleged actions of BAC, including: fraudulent misrepresentation and suppression (Counts I and II); breach of contract (Count III); negligent and/or wanton servicing of Plaintiffs' mortgage (Counts IV and V); negligent and/or wanton hiring, training, and supervision (Count VI); intentional infliction of emotional distress (Count VII); trespass (Count VIII); defamation (Count IX); civil conspiracy (Count X); and breach of contract under a third-party beneficiary theory (Count XI). Plaintiffs seek an unspecified amount of compensatory and punitive damages, but do not request an injunction against foreclosure or acceleration, or a rescission of the mortgage.

## II.  STANDARD OF REVIEW

"[F]ederal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996). However, "[f]ederal courts are courts of limited jurisdiction." *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994); *see also Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994). Thus, with respect to cases removed to this court pursuant to 28 U.S.C. § 1441, the law of the Eleventh Circuit favors remand where federal jurisdiction is not absolutely clear. "[R]emoval statutes are construed narrowly; where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand." *Burns*, 31 F.3d at 1095. "In evaluating a motion to remand, the removing party bears the burden of demonstrating federal

jurisdiction." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 n.4 (11th Cir. 1998)

(citing *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1373 (11th Cir. 1998)).

## III. DISCUSSION

### A.   "Embedded Federal Issue" Federal-Question Jurisdiction

Federal courts have subject matter jurisdiction over claims "arising under the

Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331; *see also Am. Well*

*Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260 (1916) ("a suit arises under the law that

creates the action").  Furthermore, federal-question jurisdiction may extend to state-law

causes of action if "it 'appears from the [complaint] that the right to relief [substantially or

significantly] depends upon the construction or application of [federal law].'"  *Grable &*

*Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 313 (2005) (quoting *Smith v.*

*Kansas City Title & Trust Co.*, 225 U.S. 180, 199 (1921)).  At the same time, if the embedded

issue of federal law is not substantially dispositive of the entitlement to relief on a state-law

cause of action, then federal-question jurisdiction is lacking.  *See Merrell Dow Pharm. Inc.*

*v. Thompson*, 478 U.S. 804, 813 (1986) (stating that the "mere presence of a federal issue in

a state cause of action does not automatically confer federal-question jurisdiction").  Such

may be the case, for example, when the federal issue "merely form[s] part of the backdrop

of an otherwise purely state law dispute."  *White v. Wells Fargo Home Mortg.*, No.

1:11cv408MHT, 2011 WL 3666613, at *2 (M.D. Ala. Aug. 22, 2011) (Thompson, J.)

(citation and quotation omitted).  Rather, federal-question jurisdiction premised upon an

4

embedded issue of federal law is permissible only when "a state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prods., Inc.*, 545 U.S. at 314.

Defendant BAC contends that the Court may appropriately exercise federal-question jurisdiction in this case, despite the fact that all eleven of Plaintiffs' claims are based in state law, because Plaintiffs' "claims necessarily require the interpretation of the HAMP regulations, which are federal law, as well as the [Fair Credit Reporting Act]." (Notice of Removal ¶ 12.)

In *White*, Judge Thompson addressed and granted a nearly-identical motion to remand. 2011 WL 3666613. The plaintiff in *White* was represented by the same law firm as Plaintiffs in this case, and, thus, the complaints filed in state court are nearly identical. The causes of action are, in fact, identical, and there are only a few immaterial deviations in the allegations of fact. BAC's attempts to differentiate the two cases are unavailing.

As stated by Judge Thompson, "the vast majority of [Plaintiffs'] causes of action have nothing to do with HAMP." *Id.* at *2. "For example, it appears from the complaint that a court could resolve [the plaintiff's] state-law claims of trespass, defamation, breach of contract, negligent hiring, negligent training, and negligent supervision without ever mentioning HAMP or otherwise considering the program's application to [the plaintiff's] mortgage." *Id.* This Court agrees and adds the claims of intentional infliction of emotion

distress (Count VII) and breach of contract under a third-party beneficiary theory (Count XI) to that list.[1]

As it relates to Plaintiffs' fraudulent misrepresentation and suppression claims (Counts I and II), HAMP "'appears to merely form part of the backdrop of an otherwise purely state law dispute.'"  *Id.* (quoting *Melton v. Suntrust Bank*, 780 F. Supp. 2d 458, 460 (E.D. Va. 2011)).  For these claims, federal law informs the factual background of a state law claim, but in no way interjects itself *legally* into the analysis of that state law claim.  Plaintiffs' "right to relief [does not substantially or significantly] depend[ ] upon the construction or application of [federal law].'"  *Grable & Sons Metal Prods.*, 545 U.S. at 313.

Furthermore, as discussed by Judge Thompson in *White*, "a small number of [Plaintiffs'] claims rely on [their] assertion that the application of the HAMP [Guidelines] to [their] particular mortgage precluded [BAC] from initiating foreclosure proceedings." 2011 WL 3666613, at *2.  While the Court recognizes that the HAMP Guidelines may affect

---

[1] As stated above, BAC also premised its federal-question jurisdiction argument in part on the FCRA. (Notice of Removal ¶ 12.)  Presumably, this reference was directed at Plaintiffs' defamation (or libel) claim for allegedly "publish[ing]" Plaintiffs' "credit or financial condition . . . to third parties." (Compl. ¶ 71.)  However, no mention of the FCRA is found in BAC's Response (Doc. # 13) to the Motion to Remand, and that argument is deemed abandoned.  *See Access Now, inc. v. Southwest Airlines, Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) (noting that a legal claim or argument that has not been briefed will be deemed abandoned).  Perhaps the abandonment was a wise conservation of resources.  Even though Plaintiffs may have chosen to assert an FCRA claim, the fact remains that they did not, and the Court is unaware of any authority suggesting that a defamation (or libel) claim premised on publishing false information to credit reporting agencies should be transformed into a federal law FCRA claim.  *See, e.g., Steed v. EverHome Mortg. Co.*, 308 F. App'x 364, 368 (11th Cir. 2009) (applying Georgia law and addressing a defamation claim premised on publishing false information to credit reporting agencies); *see also Lofton-Taylor v. Verizon Wireless*, 262 F. App'x 999, 1002-03 (11th Cir. 2008) (not deciding whether § 1681t(b)(1)(F) of the FCRA preempts defamation claim against a furnisher of information).

these claims, or even guide a court's analysis of BAC's duties and/or breach of those duties, the Court agrees with Judge Thompson, and numerous other courts, that "the[ir] resolution . . . likely rests, not on an interpretation of [the] HAMP [Guidelines], but on the nature of the contract between [Plaintiffs] and [BAC]." *Id.*; *see also Gretsch v. Vantium Capital, Inc.*, No. 11cv2328, 2011 WL 6754079, at *2 (D. Minn. Dec. 23, 2011) (collecting cases).

Ultimately, whatever role HAMP plays in any of these causes of action, if any, the lack of substantiality of the federal question is belied by the fact that HAMP, as authorized by the EESA, contains no private right of action. *See Nelson v. Bank of Am., N.A.*, No. 11-11091, 2011 WL 5138591, at *1 (11th Cir. Oct. 31, 2011) (unpublished) (affirming judgment of district court that there is no private right of action under HAMP). In *Merrell-Dow*, the Supreme Court found the lack of a federal private right of action quite nearly dispositive: "We simply conclude that the congressional determination that there should be no federal remedy for the violation of [a] federal statute is tantamount to a congressional conclusion that the presence of a claimed violation of the statute as an element of a state cause of action is insufficiently 'substantial' to confer federal-question jurisdiction." 478 U.S. at 815. The Supreme Court's rationale was that "it would flout congressional intent" to find federal-question jurisdiction based upon an embedded federal issue where Congress has determined that no such federal cause of action should exist. *Id.* at 825.

Although the Supreme Court backtracked from this language somewhat in *Grable*, instead emphasizing the "substantiality" test reproduced above, *supra* at 4-5, the Court

7

nevertheless accentuated the importance of the lack of a federal private right of action with respect to the substantiality requirement.  545 U.S. at 318 ("*Merrell-Dow* should be read in its entirety as treating the absence of a federal private right of action as evidence relevant to, but not dispositive of, the 'sensitive judgments about congressional intent' that § 1331 requires." (quoting *Merrell-Dow*, 478 U.S. at 810)).  The lack of a federal private right of action must be "consider[ed] in the assessment of substantiality." *Id.*  The Court reasoned that this is especially true where, as here, there is no preemption of state-law causes of action. *Id.*

In conclusion, not only is the "federal door key" missing given the lack of substantiality of the federal question (HAMP) to these state-law causes of action, but there is also a "missing welcome mat." *Id.* at 318.  This country has been wallowing in an enduring housing crisis, and the number of distressed mortgages is estimated to be in the multi-millions, with the number of HAMP eligible loans also likely numbering in the millions. *See, e.g.,* Robbie Whelan, *How Many Homes Are in Trouble?*, The Wall Street Journal, Nov. 11, 2011 (compiling results of five research groups and reporting results);[2] *see also* Ann Carrns, *After Long Ordeal, a Homeowner Can Stay Home*, N.Y. Times, Nov. 8, 2011 (describing an "onslaught of modification applications" and quoting a Chase Bank representative who stated that Chase alone was "'help[ing] 404,000 families get

---

[2] available at http://www.blogs.wsj.com/developments/2011/11/11/how-many-homes-are-in-trouble/

permanent modifications'").[3]  If the federal courts were to exercise embedded federal issue federal-question jurisdiction over these types of cases, the current of litigation between the federal and state courts would be disrupted on a grand scale, as if re-routing the Mississippi River's mouth from Venice to Houma.   In short, exercising federal-question jurisdiction would open the proverbial floodgates to a rush of original and removed filings relating to these underwater mortgages.  The resulting deluge would disturb the traditional balance of federal and state judicial responsibilities. *Grable & Sons Metal Prods., Inc.*, 545 U.S. at 314; *see also White*, 2011 WL 3666613, at *2.

## B.   <u>Diversity Jurisdiction</u>

Federal diversity jurisdiction under § 1332(a) requires both complete diversity *and* satisfaction of the requisite amount in controversy.  *See, e.g., Allapath Servs., Inc. v. Exxon Corp.*, 362 F.3d 739, 762 (11th Cir. 2004).  The parties do not dispute that complete diversity exists in this case; rather, the only dispute is whether the amount in controversy requirement is satisfied.

Where the complaint alleges unspecified damages, a party removing a case to federal court bears the burden of establishing the $75,000 jurisdictional amount by a preponderance of the evidence.  *See* Federal Courts Jurisdiction and Venue Clarification Act of 2011, Pub. L. 112-63 (2011) (amending 28 U.S.C. § 1446(c)); *see also Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 752 (11th Cir. 2010) (citing and quoting *Tapscott v. MS Dealer Serv.*

---

[3]  available at http://www.nytimes.com/2011/11/9/your-money/a-difficult-journey-to-a-mortgage-modification.html?pagewanted=all

*Corp.*, 77 F.3d 1353, 1356-57 (11th Cir. 1996)).  Although "jurisdiction should not be divined by looking to the stars[,]" *id*. (quoting *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1215 (11th Cir. 2007)), the Court may make "reasonable deductions, reasonable inferences, or other reasonable extrapolations" based upon the evidence and arguments submitted by the removing defendant.  *Id.* at 754; *see also Roe v. Michelin N.A., Inc.*, 613 F.3d 1058, 1064 (11th Cir. 2010) ("Thus, when a district court can determine, relying on its judicial experience and common sense, that a claim satisfies the amount-in-controversy requirements, it need not give credence to a plaintiff's representation that the value of the claim is indeterminate.").  However, in considering the relevant evidence, the court is obligated to construe the removal statutes narrowly and "uncertainties are resolved in favor of remand." *Burns*, 31 F.3d at 1095.

### 1.    *The Total Amount of the Debt Is Not in Controversy*

Plaintiffs' Complaint does not specify an amount of damages, only stating that Plaintiffs seek compensatory and punitive damages for their causes of action.  Importantly, Plaintiffs do not challenge the validity of the mortgage or seek an injunction prohibiting foreclosure on the property or acceleration of the debt.  BAC first contends that the amount in controversy is established by the total amount due on the Note, currently around $240,000.00.  (Pls.' Mot. to Remand 8; Note (Doc. # 1-4); Mortgage (Doc. # 1-5).)  BAC's rationale is that Plaintiffs' Complaint has "challenged [BAC's] right to accelerate the full value of the loan following their default."  (Def.'s Resp. 5.)  By supposedly making such a

10

challenge, BAC argues that the full balance of the debt is in controversy.  The Court is not persuaded.

BAC's argument either misunderstands or misrepresents the nature of the relief requested in Plaintiffs' Complaint.  The Notice of Removal states that "Plaintiffs seek to stop [BAC] from acceleration of the full value of the loan and foreclosure of the Property, and, therefore seek to avoid the clear obligations of the note at issue.  *See generally* Compl." (Notice of Removal ¶ 19.)  Nowhere in the Complaint do Plaintiffs actually request such relief, and BAC's misrepresentation in this regard is, perhaps, betrayed by the half-baked and wholly-misleading "see generally Compl[aint]" citation which it pasted onto the end of the preceding naked assertion in a bid to clothe it with authority.

The Court sees no reason to credit BAC's argument that the full amount of the note is in controversy when Plaintiffs do not seek any explicit relief against acceleration or foreclosure.  *See Ericsson GE Mobile Commc'ns v. Motorola Commc'ns & Elecs., Inc.*, 120 F.3d 216, 218-19 (11th Cir. 1997) (courts are "requir[ed] . . . to measure the object of the litigation solely from the plaintiff's perspective").  As has been decided by numerous decisions of courts in this district, the entire value of the loan is not in controversy when the plaintiffs "[do] not challenge the validity of the mortgage or seek an injunction prohibiting foreclosure."  *White*, 2011 WL 3666613, at *3 (citation omitted); *see also Parks v. Countrywide Home Loans, Inc.*, No. 2:11cv852WHA, 2011 WL 6223049, at *2-3 (M.D. Ala. Dec. 14, 2011) (Albritton, J.).  An acceleration is both a "foreclosure on the entire loan

balance" and one step in the mortgage foreclosure process.  2 Baxter Dunaway, *The Law of Distressed Real Estate* § 15:7 (2006) (also stating that "[w]ithout an acceleration clause in the security agreement, on default a lender would be able to sue only for the delinquent payments."expr).  Therefore, if Plaintiffs seek to enjoin acceleration of the debt, then the "entire loan balance" is placed in controversy.  *See Waller v. Prof'l Ins. Corp.*, 296 F.2d 545, 547 (5th Cir. 1961) (stating that "when the validity of a contract or a right to property is called into question *in its entirety*, the value of the property controls the amount in controversy").[4]

That is simply not the case here.  Plaintiffs do not seek relief against acceleration or foreclosure.  Rather, as stated by Plaintiffs, the Complaint seeks compensatory and punitive damages "primarily [for] the 'money collected by [BAC] not in accordance with the note, mortgage, loan modification and [BAC's] representations[.]'"  (Pls.' Reply 4-5 (Doc. # 15) (quoting *White*, 2011 WL 3666613, at *3).)  As stated in *White*, "it is difficult to imagine that more than $75,000 in improper fees and related charges . . . accumulated in the . . . [six] years between the issuance of the mortgage and the date [Plaintiff's] brought this action."  *Id.* at *3.

### 2.    *Punitive Damages*

Second, BAC argues that the amount in controversy is satisfied by a preponderance of the evidence because Plaintiffs seek punitive damages.  However, BAC failed to provide

---

[4]  In *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit Court of Appeals adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

an estimate of Plaintiffs' compensatory damages, which would have been helpful in informing the Court of potential punitive damages. Although the Court is entitled to use "judicial experience and common sense," *Roe*, 613 F.3d at 1064, that directive is tempered by the instruction to resolve uncertainties in favor of remand, *Burns*, 31 F.3d at 1095. Not having been provided any estimate as to compensatory damages, the Court is ill-equipped to speculate as to any punitive damages award that a jury may award. *See Pretka*, 608 F.3d at 753 ("[T]he absence of factual allegations pertinent to the existence of jurisdiction is dispositive and, in such absence, the existence of jurisdiction should not be divined by looking to the stars." (quoting *Lowery*, 483 F.3d at 1215)).

Furthermore, the punitive damages in this case, limited to the alleged mishandling of a mortgage, are unlike those in *Roe*, in which the Eleventh Circuit affirmed the district court's reasoning that "it is not speculative to conclude from the egregious conduct alleged [(wrongful death)] that the amount, whatever it is, exceeds $75,000." *Roe v. Michelin N. Am., Inc.*, 637 F. Supp. 2d 995, 999 (M.D. Ala. 2009) (Thompson, J.). The Eleventh Circuit first noted that the Alabama Wrongful Death Act, Ala. Code § 6-5-410, is unique in that it authorizes *only* punitive damages. 613 F.3d at 1065 (citing *Campbell v. Williams*, 638 So. 2d 804, 809 (Ala. 1994)). The appellate court then emphasized one consideration in measuring the amount of punitive damages: the observation that a human life "possesse[s] . . . a value beyond measure." *Id.* at 1065-66. With these considerations in mind, the

13

Eleventh Circuit found that the plaintiff's claims "more likely than not exceed[ed] the minimum jurisdictional requirement." *Id.* at 1066.

This case is very different from *Roe*. The punitive damages potentially available to Plaintiffs on these claims are substantially less than those available in a wrongful death case, based on both the nature of the claims involved and the types of remedies available in the respective causes of action. This is not a case where judicial experience and common sense can lead the Court to reasonably deduce that the amount in controversy is satisfied simply based upon the inclusion of a demand for punitive damages in the complaint. *See Roe*, 613 F.3d at 1064; *Pretka*, 608 F.3d at 754. In short, BAC has failed to prove the amount in controversy by a preponderance of the evidence and uncertainties are resolved in favor of remand.

## IV.  CONCLUSION

In accordance with the foregoing, it is ORDERED that Plaintiff's Motion to Remand (Doc. # 8) is GRANTED. The Clerk of the Court is DIRECTED to take appropriate steps to effectuate the remand.

DONE this 3rd day of February, 2012.

/s/ Mark E. Fuller
UNITED STATES DISTRICT JUDGE